# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| U.S. BANK,<br><br>      Plaintiff,<br><br>  vs.<br><br>UNITED STATES INTERNAL<br>REVENUE SERVICE,<br><br>      Defendant. | CV 12-78-M-DWM<br><br><br><br>ORDER |

UNITED STATES INTERNAL
REVENUE SERVICE,

      Counterclaim Plaintiff,

  vs.

U.S. BANK, RANDY C. HOLLAND,
a/k/a R. C. HOLLAND, and DONNA
L. HOLLAND,

      Counterclaim Defendants.

This is a declaratory judgment action initiated by U.S. Bank to establish

priority of lien on a single-family residence located at 212 Fawn Trail in Flathead

County (approximately five miles south of Whitefish). The United States, proper

party defendant on behalf of the United States Internal Revenue Service, answered, contesting the priority of U.S. Bank's lien, and brought counterclaims against U.S. Bank, Randy Holland, Donna Holland, and American Homestead Mortgage (American Homestead), asserting priority of lien, fraudulent transfer, and right to judgment and foreclosure. The Court set the matter on an expedited trial calendar and the parties cross-moved for summary judgment. Those motions (docs. 50, 69), Ms. Holland's motions to dismiss the counterclaim (docs. 30, 48), and a motion for default judgment against American Homestead (doc. 68) are now pending before the Court.

## I. Introduction

In February 1999, Randy and Donna Holland purchased the subject property when they moved to the Flathead from Billings. In December 2003, the couple filed a declaration of homestead on the subject property. In early 2004, Mr. Holland filed for bankruptcy with Ms. Holland listed as a joint debtor. Mr. Holland filed for bankruptcy because he was having trouble with bills and it was difficult for the couple to make ends meet. The Holland's bankruptcy was eventually dismissed because it was determined they could take care of their debts without discharge in bankruptcy.

The Hollands' financial woes continued after their bankruptcy petition was

dismissed, however. After moving to the Flathead, Mr. Holland started We Care Cleanup Services, a clean-up and contracting business for which he acted as sole proprietor. Mr. Holland fell behind on his business tax liabilities beginning with the payment due for the third-quarter of 2005, and the IRS assessed the unpaid amount. Mr. Holland's business taxes remained in arrears, resulting in seven additional assessments by the IRS. Mr. Holland also fell behind on his personal income taxes, which led to three further assessments against him by the IRS.

The IRS attached liens to the subject property to notify other creditors of Mr. Holland's debts. In compliance with statute, the IRS recorded a Notice of Federal Tax Lien with the Clerk and Recorder for Flathead County for each of its assessments against Mr. Holland. One such lien was unique in that it named the taxpayer as "Donna L. Holland as nominee for Randy C. Holland." All others name "R. C. Holland" or "Randy C. Holland" as the taxpayer subject to the lien.

Ms. Holland first realized Mr. Holland's tax problems in 2005 when he began to receive tax notices in the mail. The couple cased filing joint personal income tax returns in 2005 out of concern over Mr. Holland's tax issues. The IRS levied on Ms. Holland's bank account in 2007 because of Mr. Holland's delinquent taxes.

The Hollands, with the assistance of a local attorney, executed a plan to

attempt to insulate Ms. Holland's interest in the subject property from Mr. Holland's tax problems.[1] On March 27, 2007, Mr. Holland transferred his interest in the subject property to Ms. Holland via quitclaim deed. At the same time, the Hollands executed a real estate agreement. The agreement specified Ms. Holland would pay Mr. Holland $10 immediately for his interest in the subject property, coupled with her promise to sell the property to a third-party and remit half of the net proceeds to Mr. Holland by April 2, 2012 or appraise the property and pay half the value to Mr. Holland by that date. Under the agreement, Ms. Holland assumed responsibility for the mortgage and taxes and gained title to full use and occupancy of the subject property. The agreement further specified Mr. Holland may continue to use and occupy the subject property at Ms. Holland's discretion so long as he paid rent to Ms. Holland, equal to one-half the cost of utilities, repairs, improvements, and the monthly mortgage payment.

When Mr. Holland quitclaimed his interest to Ms. Holland, she actually paid him $10 for his interest in the subject property, pursuant to the agreement. Ms. Holland never sold the subject property or fulfilled her promise to pay per the

---

[1] Hereinafter Randy and Donna's quitclaim and real estate agreement arrangement will be referred to as the "sale-and-leaseback" of the subject property. As discussed *infra* with respect to the IRS's fraudulent transfer claims, the arrangement here is analogous to "sale-and-leaseback" transactions to which the Court has applied a rule giving effect to the substance of the transaction over its legal form.

agreement, however. Mr. Holland and Ms. Holland lived together on the subject property from the time of the agreement until October 1, 2010, when they separated and Ms. Holland left the property. The couple's divorce was finalized and the marriage dissolved September 8, 2011. Mr. Holland remained on the property until June 1, 2012, on which date he vacated and Ms. Holland moved back in.

While living together on the property, Mr. Holland paid expenses associated with the subject property. Mr. Holland continued to live on the property and operate his business there until June 2012. An IRS investigation revealed Mr. Holland ran his business on the subject property and paid utility bills and rent for the property while he lived there.

In 2010 the Hollands decided to refinance the property to get a better interest rate on their mortgage. They first approached American Homestead[2] and were declined because the lender and title company discovered tax liens on the property. The Hollands tried again with the same company, and on January 25, 2010, the Hollands successfully refinanced the subject property with a loan from American Homestead in the amount of $191,928.00. The loan was secured via a

---

[2]American Homestead is a subsidiary of U.S. Bank. U.S. Bank purchased the refinanced mortgage from American Homestead on January 27, 2010 and began servicing the loan March 1, 2010.

deed of trust filed January 29, 2010. The deed of trust was signed and notarized by both Randy and Donna Holland.

At the time of the 2010 refinancing, the subject property was appraised at a value of $223,000. The approximate balance of the refinanced mortgage on the subject property is $183,000. Approximately $30,000 in equity proceeds from the refinance were paid to the Hollands. Ms. Holland attempted to discharge the tax liens but was unsuccessful, so she and Mr. Holland reinvested the equity proceeds in renovations to the subject property. As of December 31, 2012, Mr. Holland's total balance of outstanding federal tax liabilities, including penalties and interest, was $129,012.95.

## II.    Judgment Against Randy Holland

The IRS and Mr. Holland have filed a stipulation to judgment. (Doc. 59.) The stipulation declares judgment is proper as to Mr. Holland's debt to the United States in the amount of $130,790.50, less credits subject to proof, plus interest and other statutory additions that have accrued since December 31, 2012. U.S. Bank does not dispute reducing Mr. Holland's tax liability to judgment. Other than entry of this stipulation, Mr. Holland has failed to appear and defaulted.

A court examines the contents of a stipulation and considers the nature of the case before determining its force and effect. *Vuitton et Fils, S.A. v. J. Young*

*Enterprises, Inc.*, 609 F.2d 1335, 1337 (9th Cir. 1979). Because all parties with

interests adverse to Mr. Holland consent to the entry of judgment, the Court

determines and adjudges he is indebted to the United States in the amount of

$129,012.95[3], less any additional credits according to proof, plus interest and other

statutory additions that have accrued since December 31, 2012.

## III.    Default Judgment Against American Homestead

American Homestead is a subsidiary of U.S. Bank. Because of its failure to

plead or otherwise defend, the Clerk of Court entered notice of  default against

American Homestead. The government then moved the Court for default judgment

against American Homestead. Before resolution of the government's motion,

American Homestead stipulated to entry of judgment. (Doc. 80.)

"The . . . decision whether to enter a default judgment is a discretionary

one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Under Fed. R. Civ.

P. 55(b), once the Clerk of Court has entered default as to a party, the party

seeking relief may move to enter default judgment. Entry of default judgment is

only appropriate where "the adversary process has been halted because of an

---

[3] The United States' prayer for relief and exhibit supporting the statement of undisputed fact seek judgment in the amount of $129,012.95. The joint stipulation to judgment between the United States and Randy seeks judgment in the amount of $130,790.50. The court attributes the discrepancy to payments tendered by Randy to the United States between the date of the stipulation (December 14, 2012) and the date of the calculation made in the exhibit (December 31, 2012). Therefore the Court enters judgment as to the amount at the later date.

essentially unresponsive party." *H.F. Livermore Corp. v. Aktiengesellschaft*

*Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). Here, American Homestead

and the United States are not adversaries. American Homestead transferred to U.S.

Bank all of its interest in the subject property prior to the start of this litigation.

U.S. Bank purchased the Hollands' refinanced mortgage from American

Homestead on January 27, 2010 and began servicing the loan March 1, 2010.

The government argues default judgment is warranted in consideration of

the factors the Ninth Circuit identified in *Eitel v. McCool*. 782 F.2d 1470 (9th Cir.

1986). These factors are:

> (1) the possibility of prejudice to the plaintiff; (2) the
> merits of plaintiff's substantive claim; (3) the sufficiency
> of the complaint; (4) the sum of money at stake in the
> action; (5) the possibility of a dispute concerning
> material facts; (6) whether the default was due to
> excusable neglect; and (7) the strong policy underlying
> the Federal Rules of Civil Procedure favoring decision
> on the merits.

*Id*. at 1471-72. Even in light of these factors and the consent to entry of judgment

against American Homestead, default judgment against American Homestead is

not warranted. The United States' contentions applying the *Eitel* factors are stated

in a conclusory manner. The government fails to identify an adverse relationship

between the parties giving rise to grounds for judgment. The government argues

American Homestead is "a potential lienholder" but does not explain that conclusion, given the transfer of all of their interest in the subject property prior to the start of this litigation.

Indeed, without an identifiable injury the United States lacks standing to pursue a claim against American Homestead. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This "irreducible constitutional minimum" requires concrete and particularized injury, a causal link between the injury and conduct giving rise to the complaint, and a likelihood the injury will be remedied by a favorable decision. *Id*. at 560-61 (citations omitted). The United States has not shown a concrete injury attributable to American Homestead, because American Homestead has no interest in the subject property. There is no indication that entry of default judgment against American Homestead will cure any injury the government complains of in its counterclaims. Accordingly, the government's motion for default judgment against American Homestead is denied.

## IV.   Lien Priority

U.S. Bank contests the validity of the tax liens on the property and seeks declaratory judgment asserting priority of their mortgage lien. Validity of the

federal tax liens is premised on the government's theory that the sale-and-leaseback arrangement between Randy and Donna Holland is a fraudulent transfer of the property. If valid, the federal tax liens are senior to the bank's lien because they attached to the property first.

The United States has valid, senior, federal tax liens on the subject property. The sale-and-leaseback arrangement is a fraudulent transfer under Montana law. The claim extinguishment provision of the Montana Uniform Fraudulent Transfer Act and homestead exemption do not prevent attachment of the government's liens. Mr. Holland's unpaid tax liabilities, the fraudulent nature of the sale-and-leaseback arrangement between he and Ms. Holland, and his continued interest in the subject property lead the Court to conclude the United States has a valid, senior lien on the subject property.

### A.    Fraudulent Transfer

The United States argues the sale-and-leaseback is a fraudulent transfer. U.S. Bank and Ms. Holland object, claiming the transfer is valid and results in ownership of the subject property by Ms. Holland free of all tax liens.

"[T]axation is not so much concerned with the refinements of title as it is with the actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss v. Bowers*, 281 U.S. 376, 378 (1930). "In a number of cases,

the Court has refused to permit the transfer of formal legal title to shift the incidence of taxation attributable to ownership of property where the transferor continues to retain significant control over the property transferred." *Frank Lyon Co. v. United States*, 435 U.S. 561, 572-73 (1978) (citations omitted). The Court's generally established principle of substance over form prioritizes the economic reality surrounding a transaction rather than the form parties employ. *Id*. at 573.

Randy and Donna Holland's arrangement is a sale-and-leaseback transaction effectuated for the purpose of avoiding taxation. Mr. Holland quitclaimed his interest in the property to Ms. Holland. Ms. Holland paid Mr. Holland $10 and promised to pay half of the proceeds on a future sale of the subject property or half the property's appraised value by April 2, 2012. Ms Holland admitted the couple agreed to the sale-and-leaseback transfer "[b]ecause there had been some problems with [Mr. Holland's] taxes." After the quitclaim and real estate agreement, Mr. Holland continued to occupy the property. He paid rent to Ms. Holland and paid expenses associated with the property. Mr. Holland retained use and enjoyment of the subject property; in economic reality and substance he remained an owner of the property.

The Court's principle of substance over form is illustrated in its decisions regarding sale-and-leaseback transactions aiming to shift depreciation deductions

from the lessee of a property to the lessor. *See Helvering v. F. & R. Lazarus & Co.*, 308 U.S. 252 (1939) (holding sale-and-leaseback transaction actually a loan secured by the property involved); *accord Swift Dodge v. Commissioner of Internal Revenue*, 692 F.2d 651 (9th Cir. 1982) (applying the principle that the provisions of an agreement and the parties' conduct is controlling when characterizing a transaction for federal tax purposes, not the particular terminology of the agreement). It is also evident from the Court's treatment of property putatively acquired by gift. *See Commissioner of Internal Revenue v. Duberstein*, 363 U.S. 278 (1960) (holding factual circumstances surrounding a "gift" payment control evaluation of whether it is properly excluded from the gross income of a taxpayer).

The transaction at issue in this case is governed by the principle of substance over form as well. Important factors in considering whether to apply this rule include the parties' legal rights and the allocation of risk. *Swift Dodge*, 692 F.2d at 653-54. Here, the sale-and-leaseback arrangement does not ultimately settle the parties' ownership rights to the property because it is contingent on Ms. Holland's payment of proceeds from a contemplated sale or appraisal of the property at a future date. Additionally, the agreement contemplates Mr. Holland's continued right to occupy, use, and enjoy the subject property at Ms. Holland's

discretion. The conditional nature of the contract confounds the exercise of Ms. Holland's discretion to exclude Mr. Holland from the property. If Ms. Holland were to seek to exclude Mr. Holland from the property, without following through on payment of proceeds of the future sale of the property, Mr. Holland would have grounds to sue to collect those funds. And Mr. Holland did actually continue to occupy, use, and enjoy the property, living and operating his business there.

The allocation of risk also counsels in favor of applying substance over form. The risk of loss or damage of the subject property and its improvements did not shift from either party following the sale-and-leaseback arrangement. Both Mr. Holland and Ms. Holland risked losing equity in the home if the proceeds of the contemplated sale were reduced due to loss or damage. Both continued to risk losing use and enjoyment of the property. In fact, Mr. Holland bore an even greater risk of loss due to his continued operation of his business on the property. The only risk Ms. Holland assumed was risk of Mr. Holland's default while continuing to occupy the property. This is the same risk she assumed when she originally contracted to purchase and mortgage the property as his spouse.

As a matter of general principle, the Hollands' sale-and-leaseback transaction is ineffective. The same is true as a matter of Montana law. Conveyances like the one at issue in this case are forbidden under fraudulent

conveyance acts. The Montana Uniform Fraudulent Transfer Act prevents the

conveyancing of property to avoid prior obligations, like federal tax liens.

Count III of the first amended counterclaim seeks to set aside the sale-and-

leaseback arrangement as a fraudulent conveyance under § 333 of the Montana

Uniform Fraudulent Transfer Act. A conveyance is a fraudulent transfer under the

Montana Uniform Fraudulent Transfer Act § 333 if:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>>
>> (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:
>>
>>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Mont. Code Ann. § 31-2-333.

The sale-and-leaseback arrangement is a fraudulent transfer under § 333(a). Mr. Holland does not dispute this contention and has stipulated to entry of judgment. Mr. Holland transferred the subject property to Ms. Holland with actual intent to hinder, delay, or defraud the United States. Montana law sets out a factor analysis for a finding of actual intent. *See* Mont. Code Ann. § 31-2-333(2). Statutory factors relevant to finding actual intent include:

- (a) the transfer or obligation was to an insider;
  - Mr. Holland quitclaimed his interest in the subject property to Ms. Holland, his wife, an "insider" pursuant to Mont. Code Ann. § 31-2-328(7).

- (b) the debtor retained possession or control of the property transferred after the transfer;
  - Mr. Holland resided and operated his business on the subject property from 1999 to June 1, 2012.
  - Mr. Holland continued to pay expenses associated with the property after the transfer.
  - Mr. Holland signed the 2010 deed of trust when the property was refinanced after the transfer.

- (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
  - Assessments for taxes due were made against Mr. Holland prior to the transfer.

- (e) the transfer was of substantially all of the debtor's assets;
  - The subject property was Mr. Holland's only major asset listed when the couple filed for bankruptcy.
  - In 2009, Mr. Holland submitted a Form 433-A to the IRS listing his total assets to be $13,112.

- (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
  - Ms. Holland paid only $10 to Mr. Holland for his interest in the subject property.
  - The subject property had approximately $30,000 in equity.
  - Under the Montana Uniform Fraudulent Transfer Act, an unperformed future promise is not value given. *See* Mont. Code Ann. § 31-2-330(1).

- (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
  - At the time of the transfer Mr. Holland owed at least $67,783.36 in unpaid taxes which he continued to fail to pay.

Mont. Code Ann. § 31-2-333(2).

Based on these statutory factors and his own admission, the sale-and-leaseback arrangement was carried out with actual intent to hinder, delay, or defraud the United States. Furthermore, the facts show Ms. Holland was aware of Mr. Holland's tax liabilities and she took steps to separate her assets from his assets. The purpose of the transfer of the subject property was to prevent Mr. Holland's tax liabilities from causing Ms. Holland to lose the subject property. Ms. Holland stated she and Mr. Holland carried out the sale-and-leaseback arrangement "[b]ecause there had been some problems with his taxes, and I did not know that until some paperwork came across that I picked up and became aware of. And so I asked that I could keep the house, and he agreed to that." The Court

enters judgment for the United States on Count III of the first amended counterclaim because no dispute exists as to any material fact underlying the finding that Mr. Holland executed the quitclaim deed to Ms. Holland with actual intent to hinder, delay, or defraud the United States.

Having found grounds to set aside the Hollands' sale and leaseback as a fraudulent transfer under § 333(1), and with entry of judgment on Count III of the government's counterclaim, it is unnecessary to proceed to other fraudulent conveyance theories advanced by the government. Claim extinguishment and homestead are raised as defenses to this finding.

### 1.  Claim Extinguishment

Ms. Holland argues the government's claims under the Montana Uniform Fraudulent Transfer Act have been extinguished pursuant to Mont. Code Ann. § 31-2-341(3). U.S. Bank joins Ms. Holland in propounding this argument. Even though the Montana Uniform Fraudulent Transfer Act phrases its statute of limitations as a claim extinguishment provision which terminates of the cause of action as of a specific date, this argument is unpersuasive. The United States is subject to a limitations period only when Congress has expressly created one. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 133 (1938) (citing *United States v. Thompson*, 98 U.S. 486, 488-89 (1878)). "In the absence of a federal

statute expressly imposing or adopting one, the United States is not bound by any limitations period." *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993). In *United States v. Summerlin*, the Court held "the United States is not bound by state statutes of limitations . . . in enforcing its rights." 310 U.S. 414, 416 (1940).

Where the United State asserts a transfer of property by a taxpayer is a fraudulent conveyance, its use of this theory is not limited to the time period set for a state fraudulent conveyance proceeding, but rather is governed by the ten-year federal collection statute at 26 U.S.C. § 6502(a)(1). *See United States v. Bacon*, 82 F.3d 822, 825 (9th Cir. 1996). This rule follows the more general proposition that state law determines the nature and definition of property rights involved in a tax dispute but federal law determines the consequences to be attached to those rights. *McPherson v. United States*, 673 F. Supp. 2d 1167, 1172 (D. Mont. 2009) (Molloy) (citing *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985).)

In *Bacon*, the Ninth Circuit addressed the issue of applicability of a state statute of limitations to a fraudulent transfer claim brought by the United States. 82 F.3d 822 (9th Cir. 1996). The Court of Appeals found that the state statute of limitations for actions brought under the Fraudulent Conveyance Act did not apply

-18-

to the federal government. Instead, the applicable limitation was the ten-year

federal statute of limitations governing tax assessment collection actions found at

26 U.S.C. § 6502(a)(1). *Id*. at 825 (citing *United States v. Overman*, 424 F.2d

1142, 1147 (9th Cir. 1970).)

Specifically at issue in *Bacon* was the question of whether the District Court

was correct in ruling the United States' fraudulent conveyance action was barred

under the claim extinguishment provision of the Uniform Fraudulent Transfer Act.

The Ninth Circuit held the Uniform Fraudulent Transfer Act could not be applied

retroactively, so the claim was analyzed under the former Uniform Fraudulent

Conveyance Act. *Id*. at 824-25. The difference between the two acts was the

addition of a "claim extinguishment provision" in the Uniform Fraudulent

Transfer Act. The claim extinguishment provision of the Act, found at Mont. Code

Ann. § 31-2-341(3), purports to abolish the right to make a claim under the Act if

the action is not commenced within four years. The Ninth Circuit stated:

> This provision differs from a traditional statute of
> limitations because it places a substantive condition on
> the accrual of a fraudulent transfer action. *McMaster*,
> 886 P.2d at 242. Courts have disagreed over whether the
> federal government is subject to the provision. *Compare*
> *United States v. Vellalos*, 780 F.Supp. 705, 708
> (D.Hawai'i 1992) (government bound by extinguishment
> provision of Hawaii's Transfer Act), *aff'd on other*
> *grounds*, 990 F.3d 1965 (9th Cir. 1993), *with Stoecklin v.*

> *United States*, 858 F.Supp. 167, 168 (M.D. Fla. 1994)
> (government not bound by identical extinguishment
> provision of Florida's Transfer Act because of the rule of
> *Summerlin*).

*Id*. at 823-24.

The Court of Appeal did not determine at that time whether the federal

government was bound by the limitations period of the Uniform Fraudulent

Transfer Act, instead finding that because the Transfer Act sought to substantively

affect the government's rights by adding a claim extinguishment provision, the

former Uniform Fraudulent Conveyance Act should instead apply. *Id.* at 824. The

Circuit Court then affirmed the general principle that the state statute of

limitations under the Uniform Fraudulent Conveyance Act does not apply to the

federal government. *Id.* at 825.

Later, the Ninth Circuit resolved the open question of the application of the

Uniform Fraudulent Transfer Act's claim extinguishment provision in *Bresson v.*

*Commissioner of Internal Revenue*. 213 F.3d 1173 (9th Cir. 2000). *Bresson*

abrogated the District of Hawaii's ruling in *Vellalos* and held the claim

extinguishment provision of the California Uniform Fraudulent Transfer Act

inapplicable to the United States Internal Revenue Service. *Id.* at 1179.

The same result applies in this case with respect to the Montana Uniform

Fraudulent Transfer Act. The Court follows the Ninth Circuit's ruling in *Bresson*, the rule of *Summerlin*, and the Supremacy Clause of the United States Constitution and applies the ten-year federal statute of limitations governing tax assessment collections found at 26 U.S.C. § 6502(a)(1). As the Ninth Circuit stated in *Bresson*:

> [T]he [claim-extinguishment] provision appears to be a dressed-up statute of limitations, crafted to circumvent the rule of *Summerlin*. To allow states to evade the *Summerlin* rule by the simple expedient of renaming their statutes of limitations is inconsistent with the core teaching of *Summerlin*—namely, that states transgress the limits of state power when they attempt to set limitations periods on claims acquired by the United States in its governmental capacity.

*Bresson*, 213 F.3d at 1179 (citations and quotations omitted).

Ms. Holland's motion to dismiss argues the United States' fraudulent conveyance claim is not a tax collection activity subject to 26 U.S.C. § 6502(a)(1). This is directly contrary to Ninth Circuit authority under *Bresson* and subsequent cases, which allow the counterclaims brought by the government to collect delinquent taxes, setting aside a fraudulent conveyance attempting to shield property from collection, and foreclose on federal tax liens.

District courts have applied *Bresson* to mean that the United States may bring fraudulent transfer actions pursuant to state law for the purpose of collecting

taxes within the time frame permitted under federal law. *See, e.g., Sequoia Property and Equipment Ltd. Partnership v. United States*, No. CV-F-97-5044-LJO, 2000 WL 1728117 at *7 (E.D. Cal. Oct. 4, 2000). In *Sequoia Property*, the district court granted the government's motion for reconsideration regarding its prior decision that the California Uniform Fraudulent Transfer Act extinguished claims to set aside fraudulent transfers to collect federal tax, finding that the Ninth Circuit's decision in *Bresson* (issued after the district court's original ruling) was dispositive that federal tax collection efforts utilizing state law actions to set aside fraudulent transfers of property are subject to the ten-year statute of limitations found in 26 U.S.C. § 6502(a)(1). *Id*. at *5-7. In affirming, the Ninth Circuit noted that "the federal government has a number of mechanisms at its disposal by which it can foreclose against property that has been fraudulently conveyed to avoid tax collection. See, e.g., 26 U.S.C. § 6324(a)(2); 26 U.S.C. § 3304; 26 U.S.C. § 6901." *Sequoia Property and Equipment, Ltd. Partnership v. United States*, 100 Fed. Appx. 638, 640 (9th Cir. 2004).

### 2.    Homestead

U.S. Bank claims the Montana Uniform Fraudulent Transfer Act does not apply to the Hollands' sale-and-leaseback arrangement because of their declaration of homestead regarding the subject property. The bank argues in order

for the Montana Uniform Fraudulent Transfer Act to apply the subject property must be an "asset". Mont. Code Ann. § 31-2-328(2)(b) defines asset to be "property of a debtor, but the term does not include . . . property to the extent it is generally exempt under nonbankruptcy law. The Montana Supreme Court has ruled a homestead is not an "asset" as defined by the Montana Uniform Fraudulent Transfer Act because it is generally exempt under nonbankruptcy law. *McCone County Federal Credit Union v. Gribble*, 216 P.3d 206, 211 (Mont. 2009).

The Hollands executed a declaration of homestead regarding the subject property on December 22, 2003. U.S. Bank argues this declaration renders the property not subject to the Montana Uniform Fraudulent Transfer Act. The government counters that the homestead exemption does not bar their fraudulent transfer claims. The government also argues U.S. Bank lacks standing to assert the homestead exemption for Mr. Holland and Ms. Holland and that the Hollands affirmatively waived their homestead declaration when refinancing the property.

### a.    Standing

The government argues in a footnote in response to U.S. Bank's motion for summary judgment that U.S. Bank lacks standing to raise the homestead exemption as a defense to fraudulent transfer. The government's standing attack against U.S. Bank proceeds on the theory that the bank has failed to show injury-

in-fact. Relying on *Lujan v. Defenders of Wildlife*, the government argues the bank has failed to affirmatively show invasion of a legally protected interest. 504 U.S. 555, 560 (1992).

The government's standing challenge is unpersuasive and does not bar the bank's discussion of the exemption. U.S. Bank has an interest in the subject property, which the government recognizes in framing its counterclaims in this action. U.S. Bank purchased the mortgage on the subject property, which the United States asserts is junior to its tax liens. Therefore, U.S. Bank would be directly harmed, and suffer injury-in-fact, if the Court were to judge the government's tax liens have priority. The potential for injury to U.S. Bank's interest in the property is not attenuated, as it is premised on their mortgage interest in the property. Accordingly, U.S. Bank has standing to raise the homestead exemption in defending its interest in the property.

### b.     Waiver

The government argues the Hollands affirmatively waived their ability to declare homestead when they purchased the subject property in 1999 and refinanced it in 2002. U.S. Bank produced documents in discovery, each signed by Mr. Holland and Ms. Holland, which state they understand the property is not exempt from execution as a homestead because under Montana law it is subject to

execution or forced sale to satisfy a judgment on debt secured to a mortgage or other encumbrance. The government argues these disclaimers demonstrate Mr. Holland and Ms. Holland have waived their homestead exemption.

The limits of these disclaimers are not discussed by the government. They do not affect the Hollands' legal right to homestead with respect to the United States. The purpose of the waivers is to ensure the mortgagee is not precluded from foreclosing on the property securing the loan in the event of default. These waivers are contracts between the Hollands as mortgagors and the respective banks as mortgagees. The United States does not explain how these contracts extend third-party rights to the government, operating as a blanket waiver of homestead with respect to parties outside the original contract. The waivers are by the Hollands with respect to their mortgage lenders and do not extend to third-parties.

### c. Exemption

The Hollands' homestead declaration does not bar the government's fraudulent transfer claims. The Ninth Circuit has stated where a state homestead law "do[es] not create a present property interest, but merely confer[s] privileges and exemptions, the federal tax lien is good against homestead property." *Shaw v. United States*, 331 F.2d 493, 497 (9th Cir. 1964) (citation omitted). "[I]n Montana

the Homestead provisions are merely exemption provisions and create no independent property interest." *United States v. Myers*, 1976 WL 1069 at *2 (D. Mont. 1976) (Battin) (citing *Aronow v. United States*, 38 A.F.T.R. 2d 76-5435 (D. Mont. 1965) (Jameson)).

In *Aronow*, the Court held a declaration of homestead by plaintiff and her husband did not create a property interest in the wife that prevented the United States' federal tax liens from being effective to the full extent of the husband's interest in the property at the time the liens attached. *Aronow*. The same result applies in this case as the facts are square and no intervening decision of the Montana Supreme Court directly on point disturbs Judge Jameson's conclusion.

U.S. Bank attempts to set aside the Court's decisions in *Myers* and *Aronow* by citing *Gribble* for the proposition that a homestead is not an "asset" under the Montana Uniform Fraudulent Transfer Act because it is generally exempt under nonbankruptcy law. This is true of general creditors, but the Montana Supreme Court's holding in *Gribble* does not extend to actions taken by the United States. *Gribble* did not address the validity of state law homestead exemptions pitted against the attachment and foreclosure of federal tax liens. The United States Tax Court distinguished *Gribble* on the basis that, as to the United States, homestead property is not "generally exempt under nonbankruptcy law" within the meaning

of the Uniform Fraudulent Transfer Act, because that property is reachable by the government through judicial process to collect unpaid income tax liabilities. *Rubenstein v. Commissioner of Internal Revenue*, 134 T.C. 266, 274-75 (2010).

In *Rubenstein*, the Tax Court construed comments to the Uniform Fraudulent Transfer Act to clarify "that if a creditor cannot reach property that is 'generally exempt' (e.g. by virtue of a homestead exemption that applies to most but not all creditors), then the property is not an 'asset' for any purpose under the UFTA *as to that creditor*." *Id.* at 275. This creditor-specific interpretation of the Act allows a fraudulent transfer claim to proceed if asserted by a creditor able to reach the property through an exception to the homestead exemption. *Id*. Notwithstanding the homestead exemption, the subject property is subject to judicial process by the United States to collect Randy's unpaid taxes. *See Shaw* 331 F.2d at 497. Therefore, as to the United States, the property is an "asset" for purposes of the Uniform Fraudulent Transfer Act. The government's fraudulent transfer claims are not barred by the Hollands' declaration of homestead.

## B. Remedy

The Court shall grant summary judgment if the moving party shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In *In re Oracle Corp. Securities*

*Litigation*, the Ninth Circuit comprehensively discussed the summary judgment standard:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d 376, 387 (9th Cir. 2010). In consideration of this standard and with no material fact as to the fraudulent transfer of the subject property in dispute, the Court proceeds to consider the remedy available to the government to set aside the Hollands' fraudulent transfer of the subject property.

Numerous federal tax assessments have been made against Mr. Holland, who neglected to pay them after notice and demand. Statutory tax liens arose as of the dates of the assessments and attached to all Mr. Holland's property and rights

to property. 26 U.S.C. § 6321. The liens remain in effect because Mr. Holland has

not paid the tax liabilities. 26 U.S.C. § 6322. Mr. Holland has stipulated to entry of

judgment against him and conceded the government holds valid liens against all

his property and rights to property.

With grounds to find the transfer of the subject property from Mr. Holland

to Ms. Holland fraudulent under Mont. Code Ann. §§ 31-2-333(1), the

government may seek the statutory remedy for fraudulent transfer. Mont. Code

Ann. § 31-2-339(1)(a) states, in relevant part, a creditor may obtain avoidance of

the transfer or obligation at issue to the extent necessary to satisfy the creditor's

claim. Accordingly, the March 2003 quitclaim is disregarded and the declaratory

relief sought by U.S. Bank is denied. "[A] prior lien gives a prior claim, which is

entitled to prior satisfaction, out of the subject it binds, unless the lien be

intrinsically defective, or be displaced by some act of the party holding it, which

shall postpone him in a Court of law or equity to a subsequent claimant." *Rankin

v. Scott*, 25 U.S. 177, 179 (1827).

Once it is established that the United States has liens on property, the Court

"may decree a sale of such property, by the proper office of the court, and a

distribution of the proceeds of such sale according to the findings of the court in

respect to the interests of the parties and the United States." 26 U.S.C. § 7403(c).

The requirements of § 7403 are met here, all parties having liens or claims upon the subject property having been named in this action. Decreeing the property be sold is proper avenue to secure payment of Mr. Holland's outstanding tax debt. *See supra Sequoia Property*, 100 Fed. Appx. at 640.

The government's lien cannot extend beyond the interest of the delinquent taxpayer. *United States v. Rodgers*, 461 U.S. 677, 690-911 (1983). However, "the right to collect and the right to seek a forced sale are two quite different things." *Id.* at 691. § 7403 contemplates "not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution." *Id.* at 694. *Roberts* echoes the historical background of forced sales as *in rem* proceedings, whereby title created by the sale extinguished all interests attached to the property, even if some owners could not otherwise be held liable for the tax. *Id.* Therefore, a spouse's homestead interest does not prevent foreclosure, but the government must treat the proportional homestead interest of the non-delinquent spouse as a senior lien and pay that spouse an amount equal to that interest from the proceeds of the foreclosure sale. *See id.* at 698-99.

The government's request for order of foreclosure of its liens on the subject

property is accordingly granted and sale of the subject property by a proper officer of the Court ordered. Proceeds of the sale are to be first be directed toward proper costs of the sale. Then, Ms. Holland is entitled to one half of the remaining proceeds, proportional to her one-half undivided interest in the property as a joint tenant under the February 1999 warranty deed. Remaining proceeds are to be distributed to the United States to the extent needed to satisfy Mr. Holland's outstanding tax liability, pursuant to 26 U.S.C. § 6321.

## V. Conclusion

Mr. Holland owes the United States over $129,000 in unpaid taxes. He has not appeared in this action, thereby consenting to judgment against him for the delinquency. The sale and leaseback arrangement he and Ms. Holland executed in March 2007 does not insulate the subject property from collection for these outstanding tax liabilities. The government made Mr. Holland aware of these assessments prior to the sale-and-leaseback arrangement and attached liens to the property. Even in spite of this notice, American Homestead, predecessor in interest to U.S. Bank, refinanced the home. Ms. Holland admits the sale-and-leaseback arrangement was carried out with the purpose of avoiding federal taxes.

The Hollands' sale-and-leaseback arrangement is invalid. As a matter of law their attempt to avoid federal taxes does not stand.

IT IS ORDERED Donna Holland's motions to dismiss for failure to state a claim (docs. 30, 48) are DENIED.

IT IS FURTHER ORDERED U.S. Bank's motion for summary judgment (doc. 50) is DENIED.

IT IS FURTHER ORDERED the government's motion for default judgment (doc. 68) against American Homestead is DENIED.

IT IS FURTHER ORDERED the government's motion for summary judgment (doc. 69) is GRANTED. U.S. Bank's claim for declaratory relief is DENIED.

IT IS FURTHER ORDERED the Clerk of Court enter judgment in the amount of $129,012.95 against Randy C. Holland for unpaid tax liabilities.

IT IS FURTHER ORDERED the United States Internal Revenue Service's tax liens on real property known as 212 Fawn Trail in Flathead County Montana are FORECLOSED. Judicial sale of the property is DECREED at a future date to be set by order of the Court, proceeds to be apportioned as discussed in this order.

IT IS FURTHER ORDERED the trial set for March 4, 2013 is VACATED. All other pending motions or matters scheduled are VACATED or DENIED as moot.

The Clerk of Court is directed to notify the parties of the entry of this order.

DATED this 1st day of March, 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT